AO 91 (Rev. 11/11)   Criminal Complaint (approved by AUSA Kang and AUSA Ashenfelter)                    CW 22-085

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Pennsylvania

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) |
| SAMIR AHMAD | ) |
| | ) |
| | ) |
| | ) |

Case No.   22-mj-1647

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____October 13, 2022_____ in the county of _____Philadelphia_____ in the
_____Eastern_____ District of _____Pennsylvania_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(d)(5)(A) | Selling and transferring a firearm to a non-U.S. national or citizen |
| 18 U.S.C. 933 | Firearms trafficking |

This criminal complaint is based on these facts:

On or about October 13, 2022, the defendant, who is not licensed to deal in firearms, sold two firearms and ammunition, affecting interstate and foreign commerce, to an individual he had reasonable cause to believe was illegally or unlawfully in the United States, in violation of 18 U.S.C., Secs. 922(d)(5)(A) and 933.

☑ Continued on the attached sheet.

_____/s/ Tyler Helms_____
*Complainant's signature*

Tyler Helms, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   ____10/18/2022____

_____/s/ Lynne A. Sitarski_____
*Judge's signature*

City and state:   _____Philadelphia, PA_____

Honorable Lynne A. Sitarski
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF ARREST WARRANT

I, Tyler Helms, being duly sworn, depose and state as follows:

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since 2021. I am currently assigned to the Philadelphia Division and am designated to investigate matters of public corruption and fraud against the government.  During my time at the FBI Academy, Quantico, Virginia, I received training in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause.

2.      As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3.      The statements in this Affidavit are based in part on my investigation of this matter and on information provided by other law enforcement officers.  Because this affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only those facts that I believe are necessary to establish probable cause to believe that SAMIR AHMAD committed violations of 18 U.S.C. § 922(d)(5)(A) (sale or transfer of firearms or ammunition to a person who, being an alien, is illegally or unlawfully in the United States), and 18 U.S.C. § 933 (trafficking in firearms).

## LEGAL AUTHORITY

4.      Title 18, United States Code, Section 922(d)(5)(A) prohibits any person from selling or otherwise disposing of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person is an alien who is illegally or unlawfully in the

1

United States. Title 8, United States Code, Section 1101(a)(3) (the Immigration and Nationality

Act) defines "alien" to mean any person who is not a citizen or national of the United States.

5.      Title 18, United States Code, Section 933 prohibits any person from transferring

or otherwise disposing of any firearm to another person in or otherwise affecting interstate

commerce, if such person knows or has reasonable cause to believe that the use, carrying, or

possession of a firearm by the recipient would constitute a felony, that is, a crime punishable

under federal or state law by imprisonment for a term exceeding one year. It is a felony under

federal law for an undocumented alien, that is, a person who is not a citizen or national of the

United States, to possess a firearm. *See* 18 U.S.C. § 922(g)(5).

## FACTS SUPPORTING PROBABLE CAUSE

### A.  Background on Investigation of Samir AHMAD

6.      Samir AHMAD is a Deputy Sheriff with the Philadelphia Sheriff's Office. He has

been a Deputy Sheriff since at least February 2018. In April 2017, AHMAD took his oath of

office and underwent ethics training, and also received tactical and weapons training as well as

training in other aspects of being a law enforcement officer. On May 1, 2017, AHMAD received

a certificate of training completion from the Pennsylvania Commission on Crime and

Delinquency's Sheriff and Deputy Sheriff Education and Training Board. As of the date of this

application, AHMAD is still employed by the Philadelphia Sheriff's Office as a Deputy Sheriff.

7.      When any individual purchases a firearm from a federal firearms licensee, the

purchaser must complete an "ATF Form 4473" (Firearms Transaction Record). On the form, the

purchaser must, among other things, provide their biographical information and attest that they

are allowed to purchase the firearm. The ATF Form 4473 also includes a section titled, "Notices,

Instructions, and Definition," which specifies that "Generally, 18 U.S.C. 922(g) prohibits the

shipment, transportation, receipt, or possession in or affecting interstate commerce of a firearm

by one who: … is an alien illegally in the United States … .” I know that AHMAD received and

completed an ATF Form 4473 in connection with a March 2021 gun purchase from Atlas

Firearms. I also know that AHMAD has purchased other guns from federal firearms licensees.

**B.** <u>**April 27, 2022 Controlled Purchase of Firearm**</u>

8.      During the investigation, law enforcement officers were informed that AHMAD

had offered to sell firearms to an individual who happened to be a confidential human source for

the FBI (hereinafter “CHS”).[1] On or about April 27, 2022, the FBI utilized the CHS to conduct a

controlled gun buy from AHMAD. Law enforcement provided the CHS with an audio recording

device, which was recording throughout the interactions between the CHS and AHMAD, as

described below. Law enforcement also checked the CHS for contraband prior to the controlled

purchase, with negative results.

9.      In the morning of April 27, 2022, while the CHS was with AHMAD in person,

the CHS told AHMAD that the CHS needed a gun. AHMAD told the CHS that he could get the

CHS a gun “right now.” Then, in the CHS’s presence and on the audio recording, AHMAD

called an individual who said that he could deliver a gun that evening or the next morning at the

earliest. AHMAD called a second individual via a video call who said that he could bring a gun

to their location within a couple hours. The second individual was on a video call with AHMAD

---

[1] The CHS used to conduct the controlled purchases described herein is cooperating with law enforcement, and the CHS's information has proven to be reliable and credible. The CHS is familiar with gun and drug trafficking through his/her personal experience. The CHS has been cooperating with federal law enforcement since 2014, and the CHS has been monetarily compensated by law enforcement for his/her cooperation. The CHS is not a U.S. citizen or national, and is currently undocumented and not legally in the United States. Law enforcement has not made any promises to the CHS regarding the CHS's immigration status, and the CHS understands that the FBI does not control immigration proceedings.

and showed the CHS and AHMAD a gun that AHMAD described as a ".38 Special revolver."
While on the video call, the individual on the phone demonstrated the gun's capability to the
CHS by firing it into a nearby mattress. AHMAD told the CHS that the gun would cost the CHS
$1,100 plus an additional $50 for ammunition. AHMAD told the CHS that he could also get the
CHS a semi-automatic firearm at a later date. AHMAD also told the CHS that he could provide
the CHS with anything the CHS could want, such as Percocet pills.

  10. After a couple hours, AHMAD left the area and returned with a Smith &
Wesson, model 67-1, .38 Special revolver, bearing serial number 20K4978, which the CHS
turned over to the FBI after the controlled purchase. The firearm is pictured below. The revolver
was loaded with six live rounds of .38 caliber rounds. AHMAD gave the CHS the revolver and
the CHS gave AHMAD $1,150 in cash. $1,100 of the payment was for the revolver and $50 was
for ammunition.  AHMAD counted the cash after the CHS handed him the money.  AHMAD did
not have the extra ammunition with him but promised that CHS that he would deliver the
ammunition at a later date.

 

  11. The FBI has been conducting this investigation with law enforcement agents from
the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). ATF agents have confirmed

that neither the CHS nor AHMAD are federal firearms licensees, that is, individuals who are authorized by law to engage in the business of selling firearms and/or ammunition. Accordingly, AHMAD was not lawfully permitted to transfer the firearm to the CHS on April 27, 2022.

### C. October 13, 2022 Controlled Purchases of Two Firearms

12.     On October 13, 2022, the FBI conducted a controlled purchase of two firearms from AHMAD utilizing the same CHS.  Law enforcement provided the CHS with an audio and video recording device, which was recording throughout the interactions between the CHS and AHMAD, as described below. Law enforcement provided $3,000 in controlled purchase funds, and checked the CHS for contraband prior to the controlled purchase, with negative results.

13.     Before the controlled purchase, the CHS called AHMAD's known phone number of (214) 284-9043. The conversation was recorded, and agents were present during the call. Among other things discussed during the call, the CHS indicated that he was an illegal immigrant to the United States. AHMAD also confirmed he sold the CHS a revolver at the first firearm purchase, then AHMAD confirmed that he will sell the CHS two pistols for $3,000.

14.     Shortly after the phone call, the CHS met with AHMAD in person. Specifically, they met in a car near the 4500 block of North Bouvier Street in North Philadelphia. Their interaction was consensually audio and video recorded by the CHS at the direction of law enforcement, with agents conducting physical surveillance of their meeting in the vicinity; the footage depicted the CHS handing $3,000 in U.S. currency to AHMAD and then AHMAD counting the currency.  AHMAD explained to the CHS that they would have to wait for another individual to deliver the firearms.  Below is a still image from the video recording depicting AHMAD accepting the money from CHS to buy the firearms:



15.     While waiting, the CHS and AHMAD discussed that the CHS was an

undocumented immigrant and that AHMAD was a Deputy Sheriff. Excerpts of the conversation

are below:

- CHS: "You know I ask you because, you (inaudible) I am illegal, I cannot buy BB gun.  If you catch me with a BB gun I get deported.  My cousin, I think he scared me about that."

- AHMAD: "You don't got to worry about none of that."

    Then, at a later point in the conversation:

- CHS: "How long you a sheriff?"

- AHMAD: "Seven years."

- CHS: "Seven years already?"

- AHMAD: "Mhmm."

- CHS: "Make good money?  How money you make in a year? 80?"

- AHMAD: "Uh...roughly."

Based on this part of the conversation, there is probable cause to believe that AHMAD knew or

6

had reasonable cause to believe that the CHS was an illegal immigrant to the United States.

16.     After approximately 15-20 minutes of waiting, AHMAD received a phone call. AHMAD then exited the car and met an unknown individual inside a different car. After several minutes, AHMAD returned to the CHS's vehicle with two pistols (specifically, Glock handguns as described below) and a gun magazine. AHMAD offered to sell the CHS a third firearm, specifically, a FN Herstal pistol, for $3,500. AHMAD had brought the extra magazine to show that CHS that he had proof of a FN for purchase. AHMAD then provided the CHS with two pistols, one of which can be seen in the photo on the right, below. The two firearms purchased were a Glock, Model 17, with serial number SSC4030, and a Glock, Model 22, with serial number AVS669.

 

17.     AHMAD said he had bullets and told the CHS to give him fifteen minutes. AHMAD pointed to one of the firearms and said he only had bullets for one of them. AHMAD then exited the vehicle, then walked directly over to 4551 North Bouvier Street, Philadelphia, Pennsylvania, which, based on law enforcement surveillance, is AHMAD's current residence. Law enforcement observed AHMAD enter the residence carrying what appeared to be cash in his

hand into the house. Below is a screenshot of a video from a pole-camera video installed by law enforcement just outside of this home showing AHMAD enter this residence.



18.     A short time later AHMAD exited 4551 North Bouvier Street, see screenshot from the pole-camera video below.  After exiting the residence, AHMAD was observed by surveillance walking directly to the CHS's vehicle, without any stops. AHMAD then handed to the CHS a clear plastic bag with ammunition.



19.     After the controlled purchase, the CHS handed over both firearms and ammunition to the FBI. Below are photographs of the two firearms and ammunition that the CHS purchased from AHMAD on October 13, 2022. The ammunition consisted of numerous .22 caliber rounds in a blue box, and numerous loose .40 caliber rounds inside of a clear sandwich bag. The two firearms were: (1) a black Glock model 22 .40-caliber semiautomatic pistol bearing serial number AVS669, and (2) a black Glock model 17 9mm semiautomatic pistol bearing serial number SCC4030.

 



20.     Law enforcement agents visually examined these guns and they appear to be real firearms capable of expelling a projectile by action of an explosive, under Title 18, United States

Code, Section 921(a)(3).

21.     ATF agents also determined that both firearms manufactured by Glock, which are manufactured in Georgia or Austria and imported to the United States through Georgia. Thus, these firearms traveled in interstate commerce before AHMAD sold and transferred them to the CHS in Philadelphia, Pennsylvania.

## CONCLUSION AND REQUEST FOR SEALING

22.     Based upon the information above, I respectfully submit that there is probable cause to believe that Samir AHMAD, committed violations of Title 18, United States Code, Sections 922(d)(5)(A) and 933. Therefore, I respectfully request that the attached arrest warrant be issued authorizing the arrest of Samir AHMAD.

23.     Your affiant requests that this Court issue an Order that the arrest warrant, affidavit and application, and all accompanying documents, be filed under seal.  Disclosure of this information would compromise this ongoing investigation by alerting the subject of this investigation and likely causing him to flee and/or destroy evidence.  Accordingly, I respectfully request that the arrest warrant specified above be issued and that the same be filed under seal.


*/s/ Tyler Helms*
TYLER HELMS
Special Agent
Federal Bureau of Investigation


SWORN TO AND SUBSCRIBED
BEFORE ME THIS __18th__ DAY
OF OCTOBER, 2022.
        /s/ Lynne A. Sitarski
_____
HONORABLE LYNNE A. SITARSKI
United States Magistrate Judge

10