**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **MAGISTRATE NO. 22-mj-1647** |
| **v.** | : | |
| **SAMIR AHMAD** | : | **FILED UNDER SEAL** |

### GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

The government, by and through its attorneys, Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and Justin Ashenfelter and J. Jeanette Kang, Assistant United States Attorneys for the district, hereby submits this Motion For Pretrial Detention to assist the Court in the Pretrial Detention Hearing scheduled for October 26, 2022.

From in or about February 2018 until approximately 10:30 a.m. on Wednesday, October 19, 2022, defendant SAMIR AHMAD was employed as a Deputy Sheriff with the Philadelphia Sheriff's Office. By 10:45 a.m. last Wednesday, the defendant had been terminated from the Sheriff's Office and was in the custody of FBI agents. He is charged by complaint with selling firearms to a person unlawfully in the United States, in violation of 18 U.S.C. § 922(d)(5)(A), and trafficking in firearms, in violation of 18 U.S.C. § 933. The charges stem from a meeting on October 13, 2022, when the defendant, then a sworn law enforcement officer, sold two semi-automatic pistols and ammunition to a confidential informant with the FBI in Philadelphia. During the exchange, the informant explained to the defendant that he was "illegal" and would "get deported" if he was caught in possession of a BB gun. The defendant responded, simply: "You don't got to worry about none of that." The defendant made $3,000 from the sale. Then, five days later – the night before he was terminated by the Sheriff's Office and arrested by the FBI – the defendant sold another semiautomatic pistol and over 50 grams of methamphetamine

to the FBI informant.

Both of the firearms the defendant sold on October 13, 2022 were traced by law enforcement as being used in a deadly shooting in Roxborough about two weeks prior. On September 27, 2022, at least four individuals opened fire on a group of juveniles leaving a football scrimmage at Roxborough High School in Philadelphia. Five juveniles were shot, and one was fatally wounded.

He is currently facing a maximum penalty of 15 years' imprisonment on the firearms trafficking charge, and he is subject to additional charges for selling methamphetamine and another pistol to the informant on the day before his arrest. The defendant is currently unemployed, facing significant time in prison for the first time in his life, and he has demonstrated that he has quick and easy access to illegal drugs and firearms. The government moves for pretrial detention because the defendant is both a danger to the community and a flight risk. The facts of this case and the crimes charged against the defendant require his pretrial detention.

## I.    BACKGROUND

During the time of the alleged criminal conduct in this case, the defendant was employed as a Deputy Sheriff with the Philadelphia Sheriff's Office. He had been a Deputy Sheriff since at least February 2018. In April 2017, the defendant took his oath of office and underwent ethics training, and also received tactical and weapons training as well as training in other aspects of being a law enforcement officer. On May 1, 2017, the defendant received a certificate of training completion from the Pennsylvania Commission on Crime and Delinquency's Sheriff and Deputy Sheriff Education and Training Board.

### A.  The Investigation

During a joint investigation conducted by the FBI and ATF, agents were informed that the defendant had offered to sell firearms to an individual who happened to be a confidential human source ("CHS") for law enforcement. The FBI utilized CHS to conduct controlled gun buys from the defendant. Law enforcement provided CHS with an audio/visual recording device, which was recording throughout the interactions between CHS and the defendant.

### B.  April 27, 2022 Controlled Purchase of a Firearm

On the morning of April 27, 2022, while CHS was with the defendant in person, CHS told the defendant that CHS needed a gun. The defendant told CHS that he could get CHS a gun "right now." Then, in CHS's presence and on the audio recording, the defendant called an individual who said that he could deliver a gun that evening or the next morning at the earliest. The defendant called a second individual via a video call who said that he could bring a gun to their location within a couple hours. The second individual was on a video call with the defendant and showed CHS and the defendant a gun that the defendant described as a ".38 Special revolver." While on the video call, the individual on the phone demonstrated the gun's capability to CHS by firing it into a nearby mattress. The defendant told CHS that the gun would cost CHS $1,100 plus an additional $50 for ammunition. The defendant told CHS that he could also get CHS a semi-automatic firearm at a later date. The defendant also told CHS that he could provide CHS with anything CHS could want, such as Percocet pills.

After a couple hours, the defendant left the area and returned with a Smith & Wesson, model 67-1, .38 Special revolver, bearing serial number 20K4978, which CHS turned over to the FBI after the controlled purchase. The firearm is pictured below. The revolver was loaded with

3

six live rounds of .38 caliber rounds. The defendant gave CHS the revolver and CHS gave the defendant $1,150 in cash. $1,100 of the payment was for the revolver and $50 was for ammunition.   The defendant counted the cash after CHS handed him the money.   The defendant did not have the extra ammunition with him but promised that CHS that he would deliver the ammunition at a later date.

 

As stated above, the FBI has been conducting this investigation with law enforcement agents from the ATF. ATF agents confirmed that neither CHS nor the defendant are federal firearms licensees, that is, individuals who are authorized by law to engage in the business of selling firearms and/or ammunition. Accordingly, the defendant was not lawfully permitted to transfer the firearm to CHS on April 27, 2022.

### C.  October 13, 2022 Controlled Purchases of Two Firearms and Ammunition

On October 13, 2022, the FBI conducted a controlled purchase of two firearms from the defendant utilizing CHS. Law enforcement provided $3,000 in controlled purchase funds.

CHS met with the defendant in CHS's car in North Philadelphia. Their interaction was consensually audio and video recorded by CHS at the direction of law enforcement, with agents

conducting physical surveillance of their meeting in the vicinity; the footage depicted CHS

handing $3,000 in U.S. currency to the defendant and then the defendant counting the currency.

The defendant explained to CHS that they would have to wait for another individual to deliver

the firearms. Below is a still image from the video recording depicting the defendant accepting

the money from CHS to buy the firearms:



While waiting, CHS and the defendant discussed that CHS was an undocumented

immigrant and that the defendant was a Deputy Sheriff. Excerpts of the conversation are below:

> CHS: "You know I ask you because, you (inaudible) I am illegal, I cannot buy BB gun.  If you catch me with a BB gun I get deported.   My cousin, I think he scared me about that."

> AHMAD: "You don't got to worry about none of that."

Then, at a later point in the conversation:

> CHS: "How long you a sheriff?"

> AHMAD: "Seven years."

5

| | |
|---|---|
| CHS: | "Seven years already?" |
| AHMAD: | "Mhmm." |
| CHS: | "Make good money?   How money you make in a year? 80?" |
| AHMAD: | "Uh...roughly." |

After approximately 15-20 minutes of waiting, the defendant received a phone call. The defendant then exited the car and met an unknown individual inside a different car. After several minutes, the defendant returned to CHS's vehicle with two pistols (specifically, a Glock, Model 17, with serial number SSC4030, and a Glock, Model 22, with serial number AVS669) and a separate magazine for a firearm. The defendant offered to sell CHS a third firearm – a FN Herstal pistol –   for $3,500. The defendant had brought the extra magazine to show CHS that he had proof of a FN Herstal pistol for purchase. One of the firearms is visible in the photos below:

 

The defendant said he had bullets and told CHS to give him fifteen minutes to retrieve it. The defendant pointed to one of the firearms and said he only had bullets for one of them. The

defendant then exited the vehicle, walked into his residence, then came out holding a clear plastic bag containing ammunition. He handed that bag to CHS.

After the controlled purchase, CHS handed over both firearms and ammunition to the FBI. The ammunition consisted of numerous .22 caliber rounds in a blue box, and numerous loose .40 caliber rounds inside of a clear sandwich bag. Below are photographs of the two firearms and ammunition that CHS purchased from the defendant on October 13, 2022.

 



**D.  October 18, 2022 Sale of Methamphetamine and a Firearm**

On October 18, 2022, the defendant met with CHS, who was operating at the direction of

7

law enforcement. The purpose of the meeting, which was audio and video recorded by CHS, was for CHS to purchase a firearm and two ounces of crystal methamphetamine from the defendant in exchange for $4,900.

The defendant met CHS in his vehicle at approximately 5:50 p.m., and they drove through Philadelphia. At the outset of their meeting, the defendant counted the money provided by CHS and then he handed over a semi-automatic pistol. After the exchange, they drove to a location where the defendant met with at least one other individual before returning to CHS' vehicle. The defendant advised that he had instant access to a pound of methamphetamine. CHS then purchased two ounces of methamphetamine from the defendant, and the defendant promised to sell additional methamphetamine to CHS the following day. Law enforcement retrieved the methamphetamine purchased from CHS, and conducted a field test on the substance with positive results for the presence of methamphetamine. The firearm purchased was a FN Herstal Five-Seven semi-automatic pistol bearing serial number 386329762.

Below are series of still images from the consensually recorded video depicting the defendant: counting the money provided by CHS; handing the firearm to CHS; and handing CHS approximately two ounces of crystal methamphetamine wrapped in a paper towel:



### E.  Search Warrant Execution at Defendant's Residence

The defendant was arrested by FBI and ATF agents at the Philadelphia Sheriff's Office on October 19, 2022, after he was officially terminated by the Sheriff's Office. A court-authorized search warrant was simultaneously executed at his residence, where police recovered another firearm (a Glock, model 26, 9mm semiautomatic pistol bearing serial number AFXV945) and a 50-round drum magazine.

Pursuant to 18 U.S.C. § 3142(e), the government submits that there is no condition or combination of conditions that will reasonably assure the defendant's appearance as required and/or the safety of the community; therefore, the government moves for the defendant's pretrial detention.

## II.  MAXIMUM AND MANDATORY MINIMUM PENALTY FOR THE CRIME CHARGED IN THE COMPLAINT

The maximum penalty for a violation of Title 18, United States Code, Section 933 (trafficking in firearms) is 15 years' imprisonment, 5 years of supervised release, a fine of up to $250,000, and a $100 special assessment.

The maximum penalty for a violation of Title 18, United States Code, Section 922(d)(5)(A) (sale or transfer of firearms or ammunition to a person who, being an alien, is illegally or unlawfully in the United States) is 10 years' imprisonment, 3 years of supervised release, a fine of up to $250,000, and a $100 special assessment.

The total maximum sentence for the offenses committed on October 13, 2022, and charged in the complaint is 25 years' imprisonment, 5 years of supervised release, a $500,000 fine, and a $200 special assessment.

Moreover, a preliminary calculation of the defendant's guideline range following his indictment on the conduct summarized above, including the drug offense, provides that he will face an estimated 10 to 12 year sentence of incarceration with a 5-year mandatory minimum.

## III.  THE DEFENDANT'S PRIOR CRIMINAL CONDUCT

The defendant has no prior felony convictions.

## IV.  THE LAW

Title 18, United States Code, Section 3142(g) sets forth the factors that this court is to consider in determining whether a person should be released or detained. In summary, these factors are:

1) the nature and circumstances of the offenses charged;
2) the weight of the evidence against the defendant;

10

3) the history and characteristics of the defendant including-
      a) employment history, financial resources, drug abuse, criminal history and record of appearance at court proceedings, and
      b) whether he was on supervision at the time of his offenses or arrests or was on release pending court proceedings;
4) the dangerousness to any person or the community.

The application of these factors set forth below demonstrates that there are no conditions of release that will reasonably assure the appearance of the defendant and the safety of the community. 18 U.S.C. §§ 3142(e), (g).

## A.      Community Ties/Employment/Likelihood of Nonappearance

The defendant committed these crimes while he was employed as a Deputy Sheriff in Philadelphia. His ties to this community, including his family members who live here, the oath he took and the badge that he wore, were not enough to stop him from trafficking in guns and drugs. The defendant is now unemployed. Following his arrest, he admitted to law enforcement that he never returned a profit on any side-business that he operated, to include a clothing company and a private security company. Accordingly, the defendant has no income or accountability to the community by way of employment or service.

The defendant was terminated from the Sheriff's Office because of his historically poor record of attendance at work. Plainly, this fact suggests that the defendant made more money through the illegal sale of firearms and drugs than he did showing up for his job as a sworn law enforcement officer, and the profits made through his illegal side business influenced his decision-making more than his call to service through his legitimate employment.

As a result, to the extent the defendant attempts to point to his personal circumstances and ties to the community to justify his release, the Court should reject those overtures. The

11

defendant abandoned his commitment to this community long ago, when he decided that crime was more profitable and convenient than upholding the oath he pledged to the citizens of Philadelphia. There was a time when the defendant seemingly understood right from wrong. His actions over the last six months, to include his willingness to sell drugs and guns within the last week, demonstrate that his moral compass is broken. The video footage from this investigation could not emphasize this point any more clearly.

The defendant has never served time in jail or prison. He faces a maximum of 15 years in prison on the charges contained in the complaint. This does not include the additional charges he will face for selling methamphetamine, which will carry a five-year mandatory minimum sentence. This significant sentence that he faces is a strong incentive to flee to avoid prison as a result of this case. Moreover, the evidence in this case is strong. The defendant was caught on video committing these crimes. *United States v. Evans*, 2015 WL 6750769, at *2 (E.D. Pa. Nov. 4, 2015) (J. Bartle) (finding that "the government has assembled a substantial body of evidence against [defendant], a factor which weighs against pretrial release."). The defendant undoubtedly presents a substantial risk of nonappearance, and he must be detained prior to trial.

B.      **Danger to the Community**

The firearms the defendant sold on October 13, 2022 were used in the Roxborough High School shooting on September 27, 2022. In that shooting, five juveniles were shot just outside of Roxborough High School. One shooting victim died. Just two weeks later, the defendant obtained two of the guns used in that shooting then sold them to the informant. The fact that the defendant had access to these guns so quickly after they were used to commit such a horrific crime speaks volumes about the danger that this defendant poses to the community. Indeed, the

investigation revealed that the defendant had access to several illegal firearms and controlled substances at his fingertips. In total, he sold four firearms to CHS, three of them within a 6-day period. Moments before the defendant sold methamphetamine, he boasted that he had access to a pound of methamphetamine at that very moment.

Methamphetamine is a powerful and deadly drug that has a high potential for abuse. His easy access to large quantities of the drug suggest that he does not value the safety of the community and is instead more interested in making money by poisoning it. The defendant knowingly and intentionally engaged in serious crime while he was a sworn law enforcement officer; the Court need not strain itself to imagine how dangerous he is now that he is unemployed and without any accountability. Now, as a criminal defendant, he poses a clear and apparent danger to the community. Accordingly, the government submits that no amount of bail could ensure the safety of the community or the defendant's return to court on these charges.

## V.   CONCLUSION

When all these factors are viewed in light of the substantial sentence the defendant faces if convicted, it is clear that no condition or combination of conditions will reasonably assure the presence of the defendant in court or the safety of the community.

WHEREFORE, the government respectfully submits that its Motion for Pretrial Detention should be granted.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

/s/ Justin Ashenfelter
JUSTIN ASHENFELTER
J. JEANETTE KANG
Assistant United States Attorneys

14

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :        MAGISTRATE NO. 22-mj-1647

v.        :

SAMIR AHMAD        :        FILED UNDER SEAL

## PRETRIAL DETENTION ORDER

AND NOW, this        day of October, 2022, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that this case is appropriate for detention under Title 18, United States Code, Section 3142(e) because:

a.    the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

b.    the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

1.    There is probable cause to believe that the defendant has violated Title 18, United States Code, Sections 922(d)(5)(A) and 933.

2.    The evidence in this case is strong, and the likelihood of conviction is great. The following provides a summary of the evidence before the Court:

a. The defendant was arrested on a complaint and warrant for selling two firearms and ammunition to a confidential informant on October 13, 2022, while he was a Deputy

Sheriff for the Philadelphia Sheriff's Office. The sale of the firearms and ammunition was captured on video. He also sold a revolver to the informant on April 27, 2022. On October 18, 2022, he again sold a firearm, as well as two ounces of methamphetamine, to the informant. A semi-automatic pistol and high capacity magazine for a firearm were recovered from the defendant's residence during a search warrant executed on October 19, 2022.

b. The maximum penalty for a violation of Title 18, United States Code, Section 933 (trafficking in firearms) is 15 years' imprisonment, 5 years of supervised release, a fine of up to $250,000, and a $100 special assessment. The maximum penalty for a violation of Title 18, United States Code, Section 922(d)(5)(A) (sale or transfer of firearms or ammunition to a person who, being an alien, is illegally or unlawfully in the United States) is 10 years' imprisonment, 3 years of supervised release, a fine of up to $250,000, and a $100 special assessment.

3.     The strength and nature of the case against the defendant, his easy access to firearms and controlled substances, the defendant's lack of employment, and the strong likelihood that the defendant will be incarcerated for a significant period of time, establishes the defendant's danger to the community and establishes a high risk that the defendant will not appear as required by the Court. The defendant knowingly and intentionally engaged in serious crime while he was a sworn law enforcement officer; the danger he poses is evident.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the

2

defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

_____
HON. CAROL S. WELLS
*United States Magistrate Judge*

3

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the Government's Motion for Pretrial Detention

and Proposed Order, was served by electronic mail upon:

Michael Parkinson, Esq.
Parkinson, Tarpey & Lloyd,
1315 Walnut Street
Suite 1605
Philadelphia, PA 19107
MP@ptlfirm.com

 /s/ Justin Ashenfelter
JUSTIN ASHENFELTER
Assistant United States Attorney

Dated: October 26, 2022